PETER K. LEVINE
PETER K. LEVINE, ESQ. SBN#113672
A Professional Law Corporation
5455 Wilshire Boulevard
Suite 1250
Los Angeles, California 90036
Telephone: (323) 934-1234

ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFONIA

| | |
|---|---|
| AMANDA SUE WILSON, <br><br> PLAINTIFF, <br><br> V. <br><br> VICTOR VALLEY COMMUNITY COLLEGE DISTRICT; VICTOR VALLEY COMMUNITY COLLEGE; VICTOR VALLEY COMMUNITY COLLEGE DISTRICT BOARD OF TRUSTEES; FRANK TRUJILLO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ASSISTANT COACH/TEACHER; DONELL THOMAS, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS HEAD COACH/TEACHER; TIMOTHY P. JOHNSTON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DEAN OF STUDENT SERVICES; FUSAKO YOKOTUBI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS VICE-PRESIDENT, HUMAN RESOURCES; AND DOES 1 – 100, INCLUSIVE, <br><br> DEFENDANTS. | CASE NO: EDCVI 14-800 R (SSx) <br><br> **SECOND AMENDED UNVERIFIED COMPLAINT FOR:** <br> [Hon. Manuel Real, U.S. District Judge] <br><br> 1.  **RETALIATION IN VIOLATION OF TITLE IX** <br> 2.  **VIOLATION OF 42 U.S.C. §1983** <br> 3.  **VIOLATION OF CIVIL CODE §52.1** <br> 4.  **VIOLATION OF CIVIL CODE §51** <br> 5.  **VIOLATION OF CIVIL CODE §51.7** <br> 6.  **VIOLATION OF CIVIL CODE §51.9** <br> 7.  **DEFAMATION/FALSE LIGHT** <br> 8.  **RECKLESS/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br> 9.  **NEGLIGENCE** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

Amanda Wilson, as and for her unverified Second Amended Complaint, respectfully alleges as follows:

1.  This lawsuit is brought to vindicate the rights of Plaintiff, Amanda S. Wilson, a female college student denied her right to equal access to the educational opportunities and benefits of a public college receiving federal financial assistance, among other things.

///

2.    Plaintiff is an adult female born June 5, 1995.  She was a minor under eighteen years of age at all times relevant hereto.

3.    Plaintiff is informed and believes and based thereon alleges that defendants, VICTOR VALLEY COMMUNITY COLLEGE DISTRICT, VICTOR VALLEY COMMUNITY COLLEGE and VICTOR VALLEY COMMUNITY COLLEGE DISTRICT BOARD OF TRUSTEES were at all times mentioned herein public entities form unknown operating as community colleges in California's community-college system in San Bernardino County, receiving federal financial assistance.

4.    For greater clarity, the term "VICTOR VALLEY" shall collectively refer to defendants VICTOR VALLEY COMMUNITY COLLEGE DISTRICT, VICTOR VALLEY COMMUNITY COLLEGE and VICTOR VALLEY COMMUNITY COLLEGE DISTRICT BOARD OF TRUSTEES, collectively.

5.    The Defendants, FRANK TRUJILLO, DONELL THOMAS, TIMOTHY P. JOHNSTON, and FUSAKO YOKOTUBI, were at all times herein mentioned faculty and/or staff members at VICTOR VALLEY, sued both individually and in their official capacity in each and every cause of action herein.

6.    Defendant DONELL THOMAS ("THOMAS") was at all relevant times the head coach of the girls' softball team at VICTOR VALLEY.  Upon information and belief, as head coach, Defendant THOMAS was responsible for the administration of VICTOR VALLEY's girls' softball team and its staff.

7.    Defendant FRANK TRUJILLO ("TRUJILLO") was at all relevant times the Assistant Coach of the girls' softball team at VICTOR VALLEY, working under the direct supervision of Defendant DONELL THOMAS.

8.    Defendant TIMOTHY P. JOHNSTON ("JOHNSTON") was at all relevant times the Dean of Student Services at VICTOR VALLEY.

9.    Defendant FUSAKO YOKOTUBI ("YOKOTUBI") was at all relevant times the Vice President Human Resources at VICTOR VALLEY.

10.  Prior to commencement of this action and within six (6) months of the events herein described, Plaintiff caused to be filed against each defendants written claims for damages in

1  compliance with the provisions of Government Code, §§ 900 et. seq., each of such claims have

2  been denied in writing on September 12, 2013.

3       11.  Plaintiff is presently ignorant of the true names and capacities of the defendants sued

4  herein as Does 1-100, and therefore sues them by fictitious names under C.C.P., §474.  Plaintiff

5  is informed and believes, and thereupon alleges, that each of the defendants designated herein as

6  a "Doe" is legally responsible in some manner for the events and happenings hereinafter

7  described, and proximately caused or contributed to the injuries and damages hereinafter

8  alleged. Plaintiff shall amend this pleading to allege their true names and capacities when the

9  same have been fully explored and known.  As used herein, the term "defendant" includes all the

10  named Defendants and Does 1 to 100, inclusive.

11       12.  The named and the fictitiously named defendants were at all times the agents, joint

12  ventures, servants, employees, and/or co-conspirators of all the other defendants acting in the

13  scope and authority of said agency, joint venture, employment and conspiratorial enterprise and

14  alone or in concert caused the injuries to Plaintiff as alleged herein, and that all acts or omissions

15  alleged herein were duly committed with the ratification, knowledge, permission,

16  encouragement, authorization and consent of each defendant designated herein.

17

18               **GENERAL FACTS APPLICABLE TO ALL CLAIMS**

19       13.  Prior to enrollment in VICTOR VALLEY, Plaintiff spent most of her life on softball

20  teams through school and "travel ball."  She was a remarkable softball player.  Plaintiff had

21  played softball since she was a very young girl.  She had devoted her life to softball, working

22  toward both athletic and academic college scholarships.

23       14.  TRUJILLO had scouted plaintiff and recruited PLAINTIFF to enroll at VICTOR

24  VALLEY and join the girls' softball team.  Plaintiff accepted the invitation and enrolled at

25  VICTOR VALLEY in early January/February 2013, having been promised financial aid.

26       15.  Plaintiff became a member of the girls' softball team at VICTOR COLLEGE in or

27  about February 2013, the spring semester.

28  ///

3

UNVERIFIED SECOND AMENDED COMPLAINT

16. The spring 2013 semester at VICTOR VALLEY was plaintiff's first semester attending college. She had just graduated a semester early from high school in December 2012, where she was a 4.0 student for the most part. She had always maintained an excellent GPA while in high school.

17. While enrolled at VICTOR VALLEY in the spring 2013 semester, plaintiff was taking four courses (12 credits), including Softball P.E. She was receiving financial aid and working two part-time jobs.

18. Commencing in mid-to-late February 2013, and continuing through his termination and even afterwards, TRUJILLO subjected PLAINTIFF to unwelcome sexual advances, harassment and discrimination individually and in his official capacity as teacher/coach. The unlawful conduct was open, continuous, severe and pervasive. His inappropriate behavior during softball practice/games included, but is not limited to, comments to Ms. Wilson such as, "where's your fine ass going because I know you didn't get your ass looking that good in those jeans to be going home." He asked her why she got her tongue piercing, telling her in a sexual way that he's never done anything sexual with a girl who's had a tongue ring before. Mr. Trujillo took inappropriate photos of Ms. Wilson while she was on the bumper of the school van cleaning the windows on the way to a game, commenting out loud words to the effect, "I have to get a picture of this" - referring to her sexually. He constantly walked behind her, inappropriately checking her out in the presence of other students. He sent her a text message saying, "Dirty girl." The other members of the team repeatedly commented on his inappropriate behavior.

19. Plaintiff filed a written complaint about TRUJILLO with VICTOR VALLEY or about April 1, 2013. TRUJILLO was suspended and/or removed shortly after Plaintiff filed that complaint.

20. Following TRUJILLO's departure, THOMAS directed and orchestrated an on-going and continuous campaign of retaliation against PLAINTIFF for exercising her legal rights. THOMAS made it perfectly clear to PLAINTIFF and other members of the girls' softball team that she was upset and angry with PLAINTIFF for filing the complaint and causing

TRUJILLO's removal as Assistant Coach.  THOMAS benched PLAINTIFF on the very day after TRUJILLO was removed from coaching.  THOMAS prohibited PLAINTIFF from playing any games the day after TRUJILLO was removed as Assistant Coach.  THOMAS benched PLAINTIFF halfway through the season, after a game with Rio Hondo College.

21.  After TRUJILLO's departure, THOMAS repeatedly and continuously made snide, defamatory, false and derogatory comments directed at PLAINTIFF in the presence of the other players of the team, expressing her disapproval of PLAINTIFF's decision to report TRUJILLO for his sexual harassment.  THOMAS made sure that everyone on the team knew she was talking about PLAINTIFF and that PLAINTIFF was responsible for TRUJILLO's removal from the team.  These remarks, referring to TRUJILLO, included words to the effect:

(a)  Referring to PLAINTIFF as a "stupid little bitch" who tore the team apart.

(b)  "Come on ladies, we have to win this for somebody who can't be here right now."

(c)  "There's no team dinner because my best friend can't be here to organize it."

(d)  "I've lost my love for the game and my best friend."

(e)  "I hate liars and lazy people.  One of them tore my team apart from the inside out." She then threw a bat and screamed obscenities, referring to PLAINTIFF.

(f)  "Be here at 12 to drag and chalk the field because my best friend can't be here to do it."

(g)  "If my assistant coach was here, I wouldn't be hurting my hand pitching these balls. But some crazy liar took my team apart from the inside out."

(h)  "Let's do this for him, someone who can't be here right now but we wish he could be."

(i)  Telling members of the team to form a circle around PLAINTIFF to scare, intimidate and haze her.

(j)  On the same day Thomas had the team form the circle around plaintiff, Thomas threw a bat while calling plaintiff a lying slut "who is tearing my team apart."

(k)  Prior to a league game, the team stopped at a sponsor (Pizza Factory) for a free meal. Defendant Thomas brought free food back for everyone on the team bus except plaintiff.

1 | Thomas (falsely) told plaintiff there's no food for her because plaintiff didn't place an order.
2 | Plaintiff told Thomas she had placed a food order.  Thomas, angry, went back into the Pizza
3 | Factory.  She returned a few minutes later, handing plaintiff burnt food in a burnt Styrofoam
4 | container.  The food was not edible.

5 | (l)  After a team game everyone went to get a meal.  Thomas isolated plaintiff from the
6 | entire team and forced plaintiff to sit by herself.

7 | (m) Prior to a team game, Thomas collected the cell phones from everyone, including
8 | plaintiff.  When Thomas gave plaintiff her phone back after the game, the plastic card inside the
9 | phone which holds critical data for the phone's operation (sim card) was scratched and
10 | damaged.  There was also water in the battery compartment.  The phone was inoperable.  No
11 | one else's phone was damaged.

12 | 22.  THOMAS deliberately and repeatedly encouraged other members of the softball
13 | team to harass, disparage, ridicule and hold PLAINTIFF in contempt because she had filed the
14 | complaint against TRUJILLO.

15 | 23.  PLAINTIFF had started and played in every softball game prior to complaining about
16 | TRUJILLO.  However, after filing the discrimination complaint against TRUJILLO, THOMAS
17 | benched PLAINTIFF, would not permit her to play and told her not to come to any more games
18 | for the rest of the season.  To add insult to injury, at least two college scouts attended one of the
19 | games PLAINTIFF didn't have the opportunity to play in, ruining plaintiff's opportunity for
20 | scholarships and attendance at college, among other things.

21 | 24.  On or about April 10, 2013, PLAINTIFF's former attorney sent a written complaint
22 | to defendant YOKOTOBI, Vice President Human Resources, notifying VICTOR VALLEY of
23 | the retaliatory discriminatory actions by THOMAS.  The situation did not change but actually
24 | became progressively worse, with more retaliation directed at PLAINTIFF.  THOMAS was not
25 | removed from her position, the retaliation continued and PLAINITFF was still not permitted to
26 | play on the softball team despite showing up for the games ready, willing and able to play.

27 | 25.  PLAINTIFF and her legal guardian (her grandmother) then scheduled a face-to-face
28 | meeting with defendant JOHNSTON, Dean of Student Affairs at VICTOR VALLEY.  In that

1    meeting PLAINTIFF told JOHNSTON about the series of events and the adverse effect it was

2    having on her emotionally, physically and academically.  JOHNSTON told PLAINTIFF and her

3    guardian that he won't take any action to protect plaintiff because it's the official policy of

4    VICTOR VALLEY to take no action while an investigation is pending.  JOHNSTON failed and

5    refused to intervene or take prompt corrective remedial action to protect PLAINTIFF, despite

6    having the power and authority to do so.

7         26.  After that meeting with JOHNSTON, Defendant THOMAS continued to bench

8    PLAINTIFF, told her not to come to games, did not allow her to play or participate in the

9    athletic activities and continued to encourage other members of the team to harass, intimidate

10   and scare her.

11        27.  PLAINTIFF became more anxious and depressed.  She lost interest in softball.

12   PLAINTIFF no longer enjoyed school or the sport of softball, which had been her life's passion.

13   She became withdrawn and her grades suffered.  She stopped attending classes because the other

14   members of the team harassed her in class.  PLAINTIFF failed 3 of her 4 courses and lost her

15   financial aid.

16        28.  This had been PLAINTIFF's first semester at college.  She had been doing extremely

17   well academically until the incidents alleged herein occurred.  She had been one of only three

18   students who earned grades of B on her first test in Principles of Management.  She had never

19   missed a class or been tardy.  She was carrying 12 units.  She was also taking Health, a

20   Computer Class, and the softball class.  These were 3-unit classes.  As soon as the season was

21   over, PLAINTIFF left the college.  The only reason she stayed was that it was a college course

22   and it would have hurt her grades if she had quit.  She eventually spoke with the athletic

23   director, who got PLAINTIFF transferred to a different P.E. class.  However, she wound up with

24   a C in that class because she was not present for most of the class.  PLAINTIFF failed all three

25   other classes due to the events described herein.

26        29.  PLAINTIFF dropped out of college due to the events she was forced to endure at

27   VICTOR VALLEY, as described herein.  She is no longer eligible for financial aid, or a

28   scholarship, and can no longer afford to attend college.  After leaving VICTOR VALLEY she

worked at two different minimum-wage jobs, at least 60 hours per week, to try and save money to go back to college.

30. Defendant TRUJILLO appeared at both of PLAINTIFF's job sites. He would intentionally wait in her cashier line at Stater Brothers and have her bag his groceries. This would cause PLAINTIFF such severe distress that she would have to leave work as soon as TRUJILLO left. She was going to request a transfer to a different store but this would have resulted in a loss of hours. So, whenever he comes in her supervisor would allow PLAINTIFF to go into the break room until TRUJILLO leaves. On one occasion, TRUJILLO came into the Del Taco where she worked, just as PLAINTIFF was leaving. PLAINTIFF walked back inside to avoid him, and she heard him say, "Fuckin' bitch" and then left.

31. Unable to attend college, plaintiff subsequently enlisted in the U.S. armed forces.

32. PLAINTIFF has suffered severe and extreme permanent psychological, emotional and mental upset, distress, and harm as a direct result of defendants' the actions. This was greatly worsened due to the failure of VICTOR VALLEY, YOKOTOBI and JOHNSTON to supervise, investigate and take measures to correct said actions. PLAINTIFF has lost interest in playing softball, which had been her life's passion. She had devoted herself to baseball since she was a little girl. She has tried to play since the events, but couldn't do it. As soon as she stepped on the field she became depressed, distressed and unable to endure the emotional pain. She was unable to stop thinking about TRUJILLO's behavior towards her, as well as what THOMAS had done turning her teammates against her, VICTOR VALLEY's deliberate failure to intervene to protect her, and her loss of scholarship and academic opportunities. This caused and continues to cause her further severe and extreme sorrow and humiliation.

## FIRST CAUSE OF ACTION

### (RETALIATION IN VIOLATION OF TITLE IX, 20 U.S.C. 1681 et. seq.)

### AGAINST VICTOR VALLEY and DOES 1 to 100

33. PLAINTIFF incorporates herein paragraphs 1 through 32, as if stated in full herein.

34. PLAINTIFF has been the victim of illegal and unlawful harassment and

discrimination in retaliation for exercising her right to file discrimination and harassment complaints. As described in paragraph 25, above, Victor Valley's response to Wilson's complaints about Thomas' retaliation was non-existent.

35. VICTOR VALLEY and its officials, including YOKOTOBI and JOHNSTON, had the power, authority to institute immediate corrective measures on behalf of VICTOR VALLEY, had actual knowledge of TRUJILLO's and THOMAS' conduct and prior conduct but responded with deliberate indifference thereby exposing PLAINTIFF to further harassment, discrimination and loss of educational opportunities, among other things.

36. In committing these unlawful acts under the color of law while in the employ of VICTOR VALLEY, ratified, condoned, approved and acted with malice, oppression and fraud, in conscious disregard of plaintiff's rights, and with no reasonable grounds to believe that their actions served any proper educational or lawful function, and they knew that the impact of their unlawful actions was damaging to the mind, the emotions, and the mental health of a minor under their care, and knew that the impact would cause (and did in fact cause) the plaintiff to suffer emotional distress, physical harm and loss of academic opportunities, among other things.

37. PLAINTIFF has suffered and continues to suffer severe and permanent psychological damage, injuries, embarrassment, humiliation, loss of reputation, lost career and educational opportunities, defamation, false light, slander, libel, physical harm and emotional distress as a direct and proximate result of defendants' violations of her rights, as well as economic damages in an amount in excess of the court's minimum jurisdiction, the exact amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**(VIOLATION OF 42 U.S.C. §1983)**

**AGAINST ALL DEFENDANTS (EXCEPT VICTOR VALLEY, YOKOTOBI and**

**JOHNSTON) and DOES 1 to 100**

38. PLAINTIFF incorporates herein paragraphs 1 through 37, as if stated in full herein.

39. Defendants' conduct as described in this pleading deprived PLAINTIFF of her federal constitutional and statutory rights, including but not limited to her constitutional rights of

9

1  equal protection of law, free speech, substantive due process, and procedural due process, as

2  well as her statutory right to equal access to education as guaranteed by Title IX of the

3  Educational Amendments of 1972, 20 U.S.C. §1681 et. seq., the California Education Code, the

4  U.S. Constitution and California Constitution, and 42. U.S.C. §1983, and Penal Code, §11166

5  et. seq.

6      40.  In committing these unlawful acts under the color of law while in the employ of

7  VICTOR VALLEY, defendants TRUJILLO and THOMAS acted with malice, oppression and

8  fraud, in conscious disregard of plaintiff's rights, and with no reasonable grounds to believe that

9  their actions served any proper educational or lawful function, and they knew that the impact of

10  their unlawful actions was damaging to the mind, the emotions, and the mental health of a minor

11  under their care, and knew that the impact would cause the plaintiff to suffer emotional distress.

12      41.  PLAINTIFF has suffered and continues to suffer severe and permanent psychological

13  damage, injuries, embarrassment, humiliation, loss of reputation, lost career and educational

14  opportunities, defamation, false light, slander, libel, physical harm and emotional distress as a

15  direct and proximate result of defendants' violations of her rights, as well as economic damages

16  in an amount in excess of the court's minimum jurisdiction, the exact amount to be determined

17  at trial.

18  ### THIRD CAUSE OF ACTION

19  ### (VIOLATION OF CIVIL CODE, §52.1)

20  ### AGAINST ALL DEFENDANTS and DOES 1 to 100

21      42.  PLAINTIFF incorporates herein paragraphs 1 through 41, as if stated in full herein.

22      43.  Defendants' conduct as described in this pleading is a violation of Civil Code, §52.1,

23  as well as the California Constitution and various other state legislative enactments and it has

24  interfered with, attempted to interfere with, and deprived PLAINTIFF of the exercise and

25  enjoyment of her guaranteed federal constitutional and statutory rights, including but not limited

26  to her constitutional rights of equal protection, free speech, substantive due process, and

27  procedural due process, as well as her statutory right to equal access to education as guaranteed

28  by Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681 et. seq., the California

10

1  Education Code, the U.S. Constitution and California Constitution, and 42. U.S.C. §1983, and

2  Penal Code, §11166 et. seq.

3      44. Following TRUJILLO's departure, THOMAS directed and orchestrated an on-going

4  and continuous campaign of retaliation against PLAINTIFF for exercising her legal rights.

5  THOMAS made it perfectly clear to PLAINTIFF and other members of the girls' softball team

6  that she was upset and angry with PLAINTIFF for filing the complaint and causing

7  TRUJILLO's removal as Assistant Coach.  THOMAS benched PLAINTIFF on the very day

8  after TRUJILLO was removed from coaching.  THOMAS prohibited PLAINTIFF from playing

9  any games the day after TRUJILLO was removed as Assistant Coach.  THOMAS benched

10  PLAINTIFF halfway through the season, after a game with Rio Hondo College.

11      45. After TRUJILLO's departure, THOMAS repeatedly and continuously made snide,

12  defamatory, false and derogatory comments directed at PLAINTIFF in the presence of the other

13  players of the team, expressing her disapproval of PLAINTIFF's decision to report TRUJILLO

14  for his sexual harassment.  THOMAS made sure that everyone on the team knew she was

15  talking about PLAINTIFF and that PLAINTIFF was responsible for TRUJILLO's removal from

16  the team.  These remarks, referring to TRUJILLO, included words to the effect:

17      (a)  Referring to PLAINTIFF as a "stupid little bitch" who tore the team apart.

18      (b)  "Come on ladies, we have to win this for somebody who can't be here right now."

19      (c)  "There's no team dinner because my best friend can't be here to organize it."

20      (d)  "I've lost my love for the game and my best friend."

21      (e)  "I hate liars and lazy people.  One of them tore my team apart from the inside out."

22  She then threw a bat and screamed obscenities, referring to PLAINTIFF.

23      (f)  "Be here at 12 to drag and chalk the field because my best friend can't be here to do

24  it."

25      (g)  "If my assistant coach was here, I wouldn't be hurting my hand pitching these balls.

26  But some crazy liar took my team apart from the inside out."

27      (h)  "Let's do this for him, someone who can't be here right now but we wish he could

28  be."

(i)  Telling members of the team to form a circle around PLAINTIFF to scare, intimidate and haze her.

(j)  On the same day Thomas had the team form the circle around plaintiff, Thomas threw a bat while calling plaintiff a lying slut "who is tearing my team apart."

(k)  Prior to a league game, the team stopped at a sponsor (Pizza Factory) for a free meal. Defendant Thomas brought free food back for everyone on the team bus except plaintiff. Thomas (falsely) told plaintiff there's no food for her because plaintiff didn't place an order. Plaintiff told Thomas she had placed a food order.  Thomas, angry, went back into the Pizza Factory.  She returned a few minutes later, handing plaintiff burnt food in a burnt Styrofoam container.  The food was not edible.

(l)  After a team game everyone went to get a meal.  Thomas isolated plaintiff from the entire team and forced plaintiff to sit by herself.

(m) Prior to a team game, Thomas collected the cell phones from everyone, including plaintiff.  When Thomas gave plaintiff her phone back after the game, the plastic card inside the phone which holds critical data for the phone's operation (sim card) was scratched and damaged.  There was also water in the battery compartment.  The phone was inoperable.  No one else's phone was damaged.

46. THOMAS deliberately and repeatedly encouraged other members of the softball team to harass, disparage, ridicule and hold PLAINTIFF in contempt because she had filed the discrimination complaint against TRUJILLO.

47. PLAINTIFF had started and played in every softball game prior to complaining about TRUJILLO.  However, after filing the discrimination complaint against TRUJILLO, THOMAS benched PLAINTIFF, would not permit her to play and told her not to come to any more games for the rest of the season.  To add insult to injury, at least two college scouts attended one of the games PLAINTIFF didn't have the opportunity to play in, ruining plaintiff's opportunity for scholarships and attendance at college, among other things.

48. Defendant VICTOR VALLEY and its officials, including YOKOTOBI and JOHNSTON had authority to institute corrective measures on behalf of VICTOR VALLEY, had

1   actual knowledge of TRUJILLO's and THOMAS' conduct and prior conduct but responded

2   with deliberate indifference.

3       49. On or about April 10, 2013, PLAINTIFF's former attorney sent a written complaint

4   to defendant YOKOTOBI, Vice President Human Resources, notifying VICTOR VALLEY of

5   the retaliatory discriminatory actions by THOMAS.  Unfortunately, the situation did not change

6   but actually became progressively worse, with more retaliation directed at PLAINTIFF by

7   THOMAS.  THOMAS was not removed from her position, the retaliation continued and

8   PLAINTIFF was still not permitted to play on the softball team despite showing up for the

9   games ready, willing and able to play.

10      50. PLAINTIFF and her legal guardian (her grandmother) then scheduled a face-to-face

11  meeting with defendant JOHNSTON, Dean of Student Affairs at VICTOR VALLEY.  In that

12  meeting, PLAINTIFF told JOHNSTON about the series of events and the adverse effect it was

13  having on her emotionally, physically and academically.  JOHNSTON told PLAINTIFF and her

14  guardian that he won't take any action to protect plaintiff because it's the official policy of

15  VICTOR VALLEY to take no action while an investigation is pending.  JOHNSTON failed and

16  refused to intervene or take prompt corrective remedial action to protect PLAINTIFF, despite

17  having the power and authority to do so.

18      51. After that meeting with JOHNSTON, defendant THOMAS continued to bench

19  PLAINTIFF, told her not to come to games, did not allow her to play or participate in the

20  athletic activities and continued to encourage other members of the team to harass, intimidate

21  and scare her.

22      52. Defendants YOKOTOBI and JOHNSTON had the authority to prevent, stop and

23  institute corrective measures on behalf of VICTOR VALLEY to prevent TRUJILLO's and

24  THOMAS' conduct but responded with deliberate indifference.  By their conduct, YOKOTOBI

25  and JOHNSTON's ratified, aided, abetted and approved THOMAS' violation of Civil Code,

26  §52.1 due to their deliberate choice and failure to investigate or respond to plaintiff's charges

27  against THOMAS.  YOKOTOBI and JOHNSTON's ratification and approval of THOMAS'

28  violation of Civil Code, §52.1 (i.e., her continuous campaign of unlawful retaliation against

1  PLAINTIFF for exercising her legal rights to be free from sex/gender discrimination) constitutes

2  a separate and distinct violation of Civil Code, §52.1

3         53.  By their deliberate indifference to the retaliatory sex/gender harassment plaintiff

4  complained about, YOKOTOBI and JOHNTSON aided, incited and abetted the conduct of

5  TRUJILLO and THOMAS.

6         54.  Defendant VICTOR VALLEY was negligent by not training and supervising

7  defendants TRUJILLO, THOMAS, YOKOTOBI and JOHNSTON in such a way as to prevent,

8  remedy, correct, report, stop or investigate the harassment, discrimination and retaliation, among

9  other things, and by not having appropriate policies or procedures to prevent harassment,

10  retaliation and discrimination.

11         55.  Commencing in mid-to-late February 2013, and continuing through his termination

12  and even afterwards, TRUJILLO subjected PLAINTIFF to unwelcome sexual advances,

13  harassment and discrimination individually and in his official capacity as teacher/coach.  The

14  unlawful conduct was open, continuous, severe and pervasive.  His inappropriate behavior

15  during softball practice/games included, but is not limited to, comments to Ms. Wilson such as,

16  "where's your fine ass going because I know you didn't get your ass looking that good in those

17  jeans to be going home."  He asked her why she got her tongue piercing, telling her in a sexual

18  way that he's never done anything sexual with a girl who's had a tongue ring before.  Mr.

19  Trujillo took inappropriate photos of Ms. Wilson while she was on the bumper of the school van

20  cleaning the windows on the way to a game, commenting out loud words to the effect, "I have to

21  get a picture of this" - referring to her sexually.  He constantly walked behind her,

22  inappropriately checking her out in the presence of other students.  He sent her a text message

23  saying, "Dirty girl."  The other members of the team repeatedly commented on his inappropriate

24  behavior.

25         56.  Following his termination resulting from plaintiff's discrimination complaint,

26  Defendant TRUJILLO retaliated and threatened plaintiff.  He appeared at both of PLAINTIFF's

27  job sites where she worked.  He would intentionally wait in her cashier line at Stater Brothers

28  and have her bag his groceries, causing plaintiff to feel threatened, intimidated or coerced.  This

would cause PLAINTIFF such severe distress that she would have to leave work as soon as TRUJILLO left. She was going to request a transfer to a different store but this would have resulted in a loss of hours. So, whenever he comes in her supervisor would allow PLAINTIFF to go into the break room until TRUJILLO leaves. On one occasion, TRUJILLO came into the Del Taco where she worked just as PLAINTIFF was leaving. PLAINTIFF walked back inside to avoid him, and she heard him say, "Fuckin' bitch" and then left. Plaintiff felt threatened, intimidated and coerced.

57. In committing these unlawful acts under the color of law while in the employ of VICTOR VALLEY, and afterwards, defendants TRUJILLO, THOMAS, YOKOTOBI and JOHNSTON acted with malice, oppression and fraud, in conscious disregard of plaintiff's rights, and with no reasonable grounds to believe that their actions served any proper educational or lawful function, and they knew that the impact of their unlawful actions was damaging to the mind, the emotions, and the mental health of a minor under their care, and knew that the impact would cause the plaintiff to suffer emotional distress.

58. PLAINTIFF has suffered and continues to suffer severe and permanent psychological damage, injuries, embarrassment, humiliation, loss of reputation, lost career opportunity, physical harm and emotional distress as a direct and proximate result of defendants' violations of her rights, as well as economic damages in an amount in excess of the court's minimum jurisdiction, the exact amount to be determined at trial.

59. Defendants' violation of plaintiff's rights as guaranteed by Civ. Code § 52.1 entitles plaintiff to compensatory and punitive damages for each offense, treble damages, a $25,000 civil penalty, attorney's fees, and injunctive relief, all of which are provided for in Civ. Code §§ 52.1, subd. (b) et. seq. and other statutes and laws.

///

///

///

///

///

### FOURTH CAUSE OF ACTION

### (VIOLATION OF CIVIL CODE, §51)

### AGAINST ALL DEFENDANTS and DOES 1 to 100

60. PLAINTIFF incorporates herein paragraphs 1 through 59, as if stated in full herein.

61. The California Unruh Civil Rights Act, Civil Code, §51, subd. (b), provides that "All persons within the jurisdiction of this state are free and equal, and no matter what their [sex/gender] are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

62. Commencing in mid-to-late February 2013, and continuing through his termination and even afterwards, TRUJILLO violated Civil Code, §51(b) by subjecting PLAINTIFF to unwelcome sexual advances, harassment and discrimination individually and in his official capacity as teacher/coach. The unlawful conduct was open, continuous, severe and pervasive. His inappropriate behavior during softball practice/games included, but is not limited to, comments to Ms. Wilson such as, "where's your fine ass going because I know you didn't get your ass looking that good in those jeans to be going home." He asked her why she got her tongue piercing, telling her in a sexual way that he's never done anything sexual with a girl who's had a tongue ring before. Mr. Trujillo took inappropriate photos of Ms. Wilson while she was on the bumper of the school van cleaning the windows on the way to a game, commenting out loud words to the effect, "I have to get a picture of this" - referring to her sexually. He constantly walked behind her, inappropriately checking her out in the presence of other students. He sent her a text message saying, "Dirty girl." The other members of the team repeatedly commented on his inappropriate behavior.

63. Following his termination resulting from Plaintiff's discrimination complaint, Defendant TRUJILLO retaliated and threatened plaintiff. He appeared at both of PLAINTIFF's job sites where she worked. He would intentionally wait in her cashier line at Stater Brothers and have her bag his groceries, causing plaintiff to feel threatened, intimidated or coerced. This would cause PLAINTIFF such severe distress that she would have to leave work as soon as TRUJILLO left. She was going to request a transfer to a different store but this would have

resulted in a loss of hours. So, whenever he comes in her supervisor would allow PLAINTIFF to go into the break room until TRUJILLO leaves. On one occasion, TRUJILLO came into the Del Taco where she worked just as PLAINTIFF was leaving. PLAINTIFF walked back inside to avoid him, and she heard him say, "Fuckin' bitch" and then left. Plaintiff felt threatened, intimidated and coerced.

64. Upon information and belief, a substantial motivating reason for Trujillo's conduct was plaintiff's sex and gender.

65. Following TRUJILLO's departure, THOMAS violated plaintiff's rights under Civil Code, §51. She directed and orchestrated an on-going and continuous campaign of retaliation against PLAINTIFF for exercising her legal rights to be free from sex/gender discrimination. THOMAS made it perfectly clear to PLAINTIFF and other members of the girls' softball team that she was upset and angry with PLAINTIFF for filing the harassment and discrimination complaint and causing TRUJILLO's removal as Assistant Coach. THOMAS benched PLAINTIFF on the very day after TRUJILLO was removed from coaching. THOMAS prohibited PLAINTIFF from playing any games the day after TRUJILLO was removed as Assistant Coach. THOMAS benched PLAINTIFF halfway through the season, after a game with Rio Hondo College.

66. After TRUJILLO's departure, THOMAS violated Civil Code, §51 by repeatedly and continuously making snide, defamatory, false and derogatory comments directed at PLAINTIFF in the presence of the other players of the team, expressing her disapproval of PLAINTIFF's decision to report TRUJILLO for his sexual harassment. THOMAS made sure that everyone on the team knew she was talking about PLAINTIFF and that PLAINTIFF was responsible for TRUJILLO's removal from the team. These remarks, referring to TRUJILLO, included words to the effect:

(a) Referring to PLAINTIFF as a "stupid little bitch" who tore the team apart.

(b) "Come on ladies, we have to win this for somebody who can't be here right now."

(c) "There's no team dinner because my best friend can't be here to organize it."

(d) "I've lost my love for the game and my best friend."

(e) "I hate liars and lazy people. One of them tore my team apart from the inside out." She then threw a bat and screamed obscenities, referring to PLAINTIFF.

(f) "Be here at 12 to drag and chalk the field because my <u>best friend</u> can't be here to do it."

(g) "If my assistant coach was here, I wouldn't be hurting my hand pitching these balls. But some crazy liar took my team apart from the inside out."

(h) "Let's do this for <u>him</u>, someone who can't be here right now but we wish he could be."

(i) Telling members of the team to form a circle around PLAINTIFF to scare, intimidate and haze her.

(j) Prior to a league game, the team stopped at a sponsor (Pizza Factory) for a free meal. Defendant Thomas brought free food back for everyone on the team bus except plaintiff. Thomas (falsely) told plaintiff there's no food for her because plaintiff didn't place an order. Plaintiff told Thomas she had in fact placed a food order. Thomas went back into the Pizza Factory. She returned a few minutes later, handing plaintiff burnt food in a burnt Styrofoam container. The food was not edible.

(k) After a team game, everyone went to get a meal. Thomas isolated plaintiff from the entire team and forced plaintiff to sit by herself.

(l) During a team practice Thomas threw a bat while calling plaintiff a lying slut "who is tearing my team apart." This occurred on the same day Thomas encouraged the team members to form a circle around plaintiff making her feel physically threatened.

(m) Prior to a team game, Thomas collected the cell phones from everyone, including plaintiff. When Thomas gave plaintiff her phone back after the game, the plastic card inside the phone which holds critical data for the phone's operation (sim card) was scratched and damaged. There was also water in the battery compartment. The phone was inoperable. No one else's phone was damaged.

///

///

67. In addition, THOMAS deliberately and repeatedly encouraged other members of the softball team to harass, disparage, ridicule and hold PLAINTIFF in contempt because she had filed the complaint against TRUJILLO.

68. Upon information and belief, a substantial motivating reason for Thomas' retaliatory conduct was plaintiff's sex and gender.

69. Defendant VICTOR VALLEY is vicariously liable for the acts and omissions of THOMAS and TRUJILLO.

70. VICTOR VALLEY violated Civil Code, §51 (b), by inter alia, failing to operate its school services on a nondiscriminatory basis, by failing to investigate or take necessary steps to end the retaliatory actions of TRUJILLO pending such investigation, and by failing to ensure that plaintiff has nondiscriminatory access to its services.  VICTOR VALLEY was indifferent and did not take any meaningful action after PLAINTIFF complained to VICTOR VALLEY about THOMAS' retaliatory conduct based on her sex/gender.  VICTOR VALLEY's failure to responded not only aided and abetted THOMAS, but was deliberately indifferent to plaintff's complaints thereby resulting in denial to plaintiff, because of her sex and gender, full and equal accommodations, advantages, services, facilities, and privileges of the school.

71. VICTOR VALLEY knowingly allowed sexual harassment, harassment, threats, profanity, retaliation, violence, physical harm, a hostile educational environment, peer-to-peer harassment and discrimination (collectively hereinafter referred to in this pleading as "harassment") against PLAINTIFF on and off campus in violation based on her sex and gender knowing the harassment was in retaliation for PLAINTIFF's filing a discrimination complaint. VICTOR VALLEY knew the harassment unreasonably interfered with plaintiff's school academic and sports programs/performance and right to an education creating an intimidating, hostile or offensive educational environment that severely affected her psychological, mental and physical well-being.

72. VICTOR VALLEY aided, incited and further violated the Unruh Action, Civil Code, §51 (b), by having, maintaining, and establishing policies that discriminate against students who reasonably believe she is a victim of harassment on account of sex/gender.

73. VICTOR VALLEY had direct knowledge of the effect its conduct was having on plaintiff which unlawfully denied plaintiff access to their location and their facilities.

74. YOKOTOBI and JOHNSTON ratified, approved, aided, incited and violated Civil Code, §51 (b) because they had the authority to prevent, stop and institute corrective measures on behalf of VICTOR VALLEY to prevent TRUJILLO's and THOMAS' conduct but responded with deliberate indifference. By their deliberate indifference to the retaliatory sex/gender harassment plaintiff complained about, YOKOTOCI and JOHNTSON ratified, approved, aided and abetted the conduct of TRUJILLO and THOMAS. YOKOTOCI and JOHNSTON were maintaining, establishing, or failing to abolish policies that discriminated against plaintiff because of her sex/gender thereby resulting in denial to plaintiff, because of her sex and gender, full and equal accommodations, advantages, services, facilities, and privileges of the school.

75. YOKOTOBI and JOHNSTON had authority to institute corrective measures on behalf of VICTOR VALLEY, had actual knowledge of TRUJILLO's and THOMAS' conduct and prior conduct but responded with deliberate indifference.

76. VICTOR VALLEY, YOKOTOBI and JOHNSON are mandatory reporters under a duty to investigate and report known or suspected child abuse, as required by Penal Code, §11166 et. seq. and other laws, which they deliberately chose to ignore and violate.

77. To the extent allowed by law, defendants' violation of plaintiff's rights as guaranteed by Civ. Code § 51 entitles plaintiff to compensatory and punitive damages for each offense, treble damages, a $25,000 civil penalty, attorney's fees, and injunctive relief, all of which are provided for in Civ. Code §§ 52.1, subd. (b) et. seq. and other statutes and laws.

///
///
///
///
///
///

# FIFTH CAUSE OF ACTION

## (VIOLATION OF CIVIL CODE, §51.7)

### AGAINST ALL DEFENDANTS and DOES 1 to 100

78.  PLAINTIFF incorporates herein paragraphs 1 through 77, as if stated in full herein.

79.  Civil Code 51.7 (Ralph Civil Rights Act of 2005) is a hate crimes statute that states that all persons have "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of [their sex/gender]."

80.  Defendants' conduct as described in paragraphs 61 – 77 of this pleading is also a violation of Civil Code, §51.7.

81.  Commencing in mid-to-late February 2013, and continuing through his termination and even afterwards, TRUJILLO violated Civil Code, §51.7 by comments to Ms. Wilson (a minor student) such as, "where's your fine ass going because I know you didn't get your ass looking that good in those jeans to be going home." He asked her why she got her tongue piercing, telling her in a sexual way that he's never done anything sexual with a girl who's had a tongue ring before.  Mr. Trujillo took inappropriate photos of Ms. Wilson while she was on the bumper of the school van cleaning the windows on the way to a game, commenting out loud words to the effect, "I have to get a picture of this" - referring to her sexually.  He constantly walked behind her, inappropriately checking her out in the presence of other students.  He sent her a text message saying, "Dirty girl."  The other members of the team repeatedly commented on his inappropriate behavior.

82.  Following his termination resulting from plaintiff's discrimination complaint, Defendant TRUJILLO retaliated and threatened plaintiff.  He appeared at both of PLAINTIFF's job sites where she worked.  He would intentionally wait in her cashier line at Stater Brothers and have her bag his groceries, causing plaintiff to feel threatened, intimidated or coerced.  This caused PLAINTIFF such severe distress that she would have to leave work as soon as TRUJILLO left.  She was going to request a transfer to a different store but this would have resulted in a loss of hours and money.  So, whenever he comes in her supervisor would allow PLAINTIFF to go into the break room until TRUJILLO leaves.  On one occasion, TRUJILLO

came into the Del Taco where she worked just as PLAINTIFF was leaving.  PLAINTIFF walked back inside to avoid him, and she heard him say, "Fuckin' bitch" and then left.  These actions by TRUJILLO constitute a violation of Civ. Code, § 51.7 as they are threats of violence and intimidation by threat of violence committed against plaintiff and motivated by her having filed a discrimination complaint against him.

83.  THOMAS' throwing the bat, telling members of the team to form a circle around plaintiff to scare, intimidate and haze her, as well as the use of obscenities constitute a violation of Civ. Code, § 51.7 as it is a threat of violence and intimidation by threat of violence committed against plaintiff.

84.  Thomas' actions were motivated by plaintiff just having filed a discrimination complaint against Trujillo.

85.  On or about April 10, 2013, PLAINTIFF's former attorney sent a written complaint to defendant YOKOTOBI, Vice President Human Resources, notifying VICTOR VALLEY of the retaliatory discriminatory actions by THOMAS.  Unfortunately, the situation did not change but actually became progressively worse, with more retaliation directed at PLAINTIFF by THOMAS.  THOMAS was not removed from her position, the retaliation continued and PLAINTIFF was still not permitted to play on the softball team despite showing up for the games ready, willing and able to play.

86.  PLAINTIFF and her legal guardian (her grandmother) then scheduled a face-to-face meeting with defendant JOHNSTON, Dean of Student Affairs at VICTOR VALLEY.  In that meeting, PLAINTIFF told JOHNSTON about the series of events and the adverse effect it was having on her emotionally, physically and academically.  JOHNSTON told PLAINTIFF and her guardian that he won't take any action to protect plaintiff because it's the official policy of VICTOR VALLEY to take no action while an investigation is pending.  JOHNSTON failed and refused to intervene or take prompt corrective remedial action to protect PLAINTIFF, despite having the power and authority to do so.

87.  After that meeting with JOHNSTON, defendant THOMAS continued to bench PLAINTIFF, told her not to come to games, did not allow her to play or participate in the

athletic activities and continued to encourage other members of the team to harass, intimidate and scare her.

88. Defendants YOKOTOBI and JOHNSTON had the authority to prevent stop and institute corrective measures on behalf of VICTOR VALLEY to prevent TRUJILLO's and THOMAS' conduct but responded with deliberate indifference. By their conduct, YOKOTOBI and JOHNSTON's ratified, aided, abetted and approved THOMAS' violation of Civil Code, §51.7 due to their deliberate choice and failure to investigate or respond to plaintiff's charges against THOMAS. YOKOTOBI and JOHNSTON's ratification and approval of THOMAS' violation of Civil Code, §51.7 (i.e., her continuous campaign of unlawful retaliation against PLAINTIFF for exercising her legal rights to be free from sex/gender discrimination) constitutes a separate and distinct violation of Civil Code, §51.7.

89. By their deliberate indifference to the retaliatory sex/gender harassment plaintiff complained about, YOKOTOBI and JOHNTSON aided, incited and abetted the conduct of TRUJILLO and THOMAS.

90. Defendant VICTOR VALLEY is vicariously liable for the acts and omissions of THOMAS, TRUJILLO, YOKOTOBI and JOHNSTON and because it aided, abetted and incited the violation by Thomas.

91. Defendants' violation of plaintiff's rights as guaranteed by Civ. Code § 51.7 entitles plaintiff to compensatory and punitive damages for each offense, treble damages, a $25,000 civil penalty, attorney's fees, and injunctive relief, all of which are provided for in Civ. Code §§ 52.1, subd. (b) et. seq. and other statutes and laws.

92. Defendants' conduct is a violation of Civil Code, §52 (b) which provides "whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right" in addition to the exemplary damages, and a civil penalty. As a result of Defendants' violation of plaintiff's rights as guaranteed by Civ. Code § 52, plaintiff is additionally entitled to compensatory and punitive damages for each offense, treble damages, a $25,000 civil penalty, attorney's fees, and injunctive relief, all of which are provided for in Civ. Code §§ 52.1, subd.

(b) et. seq. and other statutes and laws.

## SIXTH CAUSE OF ACTION

## (VIOLATION OF CIVIL CODE, §51.9)

## AGAINST ALL DEFENDANTS and DOES 1 to 100

93. PLAINTIFF incorporates herein paragraphs 1 through 92, as if stated in full herein.

94. Civil Code, §51.9 prohibits sexual harassment between a teacher and a student.

95. Defendants' conduct as described in paragraphs 61 – 77 of this pleading is also a violation of Civil Code, §51.9.

96. THOMAS' throwing the bat, telling members of the team to form a circle around plaintiff to scare, intimidate and haze her, as well as the use of obscenities is a threat of violence and intimidation by threat of violence committed against plaintiff substantially motivated by plaintiff just having filed a discrimination complaint against Trujillo. By virtue of her unlawful retaliatory acts, DONNELL THOMAS ratified and approved Trujillo's sexual harassment of plaintiff and, thus, she independently and individually violated §51.9.

97. On or about April 10, 2013, PLAINTIFF's former attorney sent a written complaint to defendant YOKOTOBI, Vice President Human Resources, notifying VICTOR VALLEY of the retaliatory discriminatory actions by THOMAS. Unfortunately, the situation did not change but actually became progressively worse, with more retaliation directed at PLAINTIFF by THOMAS. THOMAS was not removed from her position, the retaliation continued and PLAINTIFF was still not permitted to play on the softball team despite showing up for the games ready, willing and able to play.

98. PLAINTIFF and her legal guardian (her grandmother) then scheduled a face-to-face meeting with defendant JOHNSTON, Dean of Student Affairs at VICTOR VALLEY. In that meeting, PLAINTIFF told JOHNSTON about the series of events and the adverse effect it was having on her emotionally, physically and academically. JOHNSTON told PLAINTIFF and her guardian that he won't take any action to protect plaintiff because it's the official policy of VICTOR VALLEY to take no action while an investigation is pending. JOHNSTON failed and refused to intervene or take prompt corrective remedial action to protect PLAINTIFF, despite

1   having the power and authority to do so.

2      99.  After that meeting with JOHNSTON, defendant THOMAS continued to bench

3   PLAINTIFF, told her not to come to games, did not allow her to play or participate in the

4   athletic activities and continued to encourage other members of the team to harass, intimidate

5   and scare her.

6      100.  Defendants YOKOTOBI and JOHNSTON had the authority to prevent stop and

7   institute corrective measures on behalf of VICTOR VALLEY to prevent TRUJILLO's and

8   THOMAS' conduct but responded with deliberate indifference.  By their conduct, YOKOTOBI

9   and JOHNSTON's ratified, aided, abetted and approved THOMAS' violation of Civil Code,

10  §51.9 due to their deliberate choice and failure to investigate or respond to plaintiff's charges

11  against THOMAS.  YOKOTOBI and JOHNSTON's ratification and approval of THOMAS'

12  violation of Civil Code, §51.9 (i.e., her continuous campaign of unlawful retaliation against

13  PLAINTIFF for exercising her legal rights to be free from sex/gender discrimination) constitutes

14  a separate and distinct violation of Civil Code, §51.9.

15     101.   By their deliberate indifference to the retaliatory sex/gender harassment plaintiff

16  complained about, YOKOTOBI and JOHNTSON aided, incited and abetted the conduct of

17  TRUJILLO and THOMAS.

18     102.   Defendant VICTOR VALLEY is vicariously liable for the acts and omissions of

19  THOMAS, TRUJILLO, YOKOTOBI and JOHNSTON.

20     103.   VICTOR VALLEY aided, abetted, incited and violated Civil Code, §51.9,  by

21  inter alia, failing to operate its school services on a nondiscriminatory basis, by failing to

22  investigate or take necessary steps to end the retaliatory actions of TRUJILLO pending such

23  investigation, and by failing to ensure that plaintiff has nondiscriminatory access to its services.

24  VICTOR VALLEY was indifferent and did not take any meaningful action after PLAINTIFF

25  complained to VICTOR VALLEY about THOMAS' retaliatory conduct based on her

26  sex/gender.  VICTOR VALLEY's failure to responded not only aided and abetted THOMAS,

27  but was deliberately indifferent to plaintiff's complaints thereby resulting in denial to plaintiff,

28  because of her sex and gender, full and equal accommodations, advantages, services, facilities,

1   and privileges of the school.

2       104.   VICTOR VALLEY knowingly allowed sexual harassment, harassment, threats,

3   profanity, retaliation, violence, physical harm, a hostile educational environment, peer-to-peer

4   harassment and discrimination (collectively hereinafter referred to in this pleading as

5   "harassment") against PLAINTIFF on and off campus in violation based on her sex and gender

6   knowing the harassment was in retaliation for PLAINTIFF's filing a discrimination complaint.

7   VICTOR VALLEY knew the harassment unreasonably interfered with plaintiff's school

8   academic and sports programs/performance and right to an education creating an intimidating,

9   hostile or offensive educational environment that severely affected her psychological, mental

10  and physical well-being.

11      105.   VICTOR VALLEY aided, incited and further violated §51.9, by having,

12  maintaining, and establishing policies that discriminate against students who reasonably believe

13  she is a victim of harassment on account of sex/gender.

14      106.   VICTOR VALLEY had direct knowledge of the effect its conduct was having on

15  plaintiff which unlawfully denied plaintiff access to their location and their facilities.

16      107.   YOKOTOBI and JOHNSTON aided, incited and violated Civil Code, §51.9

17  because they had the authority to prevent, stop and institute corrective measures on behalf of

18  VICTOR VALLEY to prevent TRUJILLO's and THOMAS' conduct but responded with

19  deliberate indifference. By their deliberate indifference to the retaliatory sex/gender harassment

20  plaintiff complained about, YOKOTOCI and JOHNSON ratified, approved, aided and abetted

21  the conduct of TRUJILLO and THOMAS.  YOKOTOCI and JOHNSON were maintaining,

22  establishing, or failing to abolish policies that discriminated against plaintiff because of her

23  sex/gender thereby resulting in denial to plaintiff, because of her sex and gender, full and equal

24  accommodations, advantages, services, facilities, and privileges of the school.

25      108.   YOKOTOBI and JOHNSTON had authority to institute corrective measures on

26  behalf of VICTOR VALLEY, had actual knowledge of TRUJILLO's and THOMAS' conduct

27  and prior conduct but responded with deliberate indifference.

28  ///

109.   Defendants' conduct as described in this pleading is a violation of Civil Code, §51.9.

110.   Defendants' violation of plaintiff's rights as guaranteed by Civ. Code § 51.9 entitles plaintiff to compensatory and punitive damages for each offense, treble damages, a $25,000 civil penalty, attorney's fees, and injunctive relief, all of which are provided for in Civ. Code §§ 52.1, subd. (b) et. seq. and other statutes and laws.

111.   Defendants' conduct is a violation of Civil Code, §52 (b) which provides "whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right" in addition to the exemplary damages, and a civil penalty.  As a result of Defendants' violation of plaintiff's rights as guaranteed by Civ. Code § 52, plaintiff is additionally entitled to compensatory and punitive damages for each offense, treble damages, a $25,000 civil penalty, attorney's fees, and injunctive relief, all of which are provided for in Civ. Code §§ 52.1, subd. (b) et. seq. and other statutes and laws.

### SEVENTH CAUSE OF ACTION
### (DEFAMATION AND FALSE LIGHT)
### AGAINST ALL DEFENDANTS (EXCEPT TRUJILLO, JONSTON AND YOKOTOBI)
### and DOES 1 to 100

112.   PLAINTIFF incorporates herein paragraphs 1 through 111, as if stated in full herein.

113.   The statements by Defendants as described in paragraph 21 of this pleading are false, misleading, smearing, disparaging and defamatory towards PLAINTIFF and depict her in a false light.

114.   The defamatory statements were formulated and understood as assertions of fact, and not as opinion.

115.   None of the defamatory publications against the Plaintiff were true.

116.   The statements were defamatory both on their face and in light of the extrinsic

1   circumstances.

2        117.   Defendants made these false publications and republications negligently,

3   recklessly, and intentionally, in a manner equaling and revealing malice and a conscious

4   disregard of the truth.  Defendants made the defamatory publications with hatred or ill will, with

5   the intent to vex, injure, and annoy, with knowledge of their falsity and without belief in their

6   truth, and after no investigation of the truth or an investigation that, under the circumstances,

7   was grossly inadequate.

8        118.   Upon information and belief, defendants excessively, negligently, and recklessly

9   published these statements to individuals with no need to know, and who made no inquiry, and

10  who had a mere general or idle curiosity about this information.

11       119.   Defendant VICTOR VALLEY and its officials, including YOKOTOBI and

12  JOHNSTON had authority to institute corrective measures on behalf of VICTOR VALLEY, had

13  actual knowledge of TRUJILLO's and THOMAS' conduct and prior conduct but responded

14  with deliberate indifference.

15       120.   Defendant VICTOR VALLEY was negligent by not training and supervising

16  defendants TRUJILLO, THOMAS, YOKOTOBI and JOHNSTON in such a way as to prevent

17  the defamation.

18       121.   In committing these unlawful acts under the color of law while in the employ of

19  VICTOR VALLEY, defendants TRUJILLO, THOMAS, YOKOTOBI and JOHNSTON acted

20  with malice, oppression and fraud, in conscious disregard of plaintiff's rights, and with no

21  reasonable grounds to believe that their actions served any proper educational or lawful

22  function, and they knew that the impact of their unlawful actions was damaging to the mind, the

23  emotions, and the mental health of a minor under their care, and knew that the impact would

24  cause the plaintiff to suffer emotional distress.

25  ///

26  ///

27  ///

28  ///

122.    PLAINTIFF has suffered and continues to suffer severe and permanent psychological damage, injuries, embarrassment, humiliation, loss of reputation, lost career and educational opportunities, defamation, false light, slander, libel, physical harm and emotional distress as a direct and proximate result of defendants' violations of her rights, as well as economic damages in an amount in excess of the court's minimum jurisdiction, the exact amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## (RECKLESS AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

## AGAINST ALL DEFENDANTS and DOES 1 to 100

123.    PLAINTIFF incorporates herein paragraph 1 through 122, as if stated in full herein.

124.    Commencing in mid-to-late February 2013, and continuing through his termination and even afterwards, TRUJILLO subjected PLAINTIFF to unwelcome sexual advances, harassment and discrimination individually and in his official capacity as teacher/coach.  The unlawful conduct was open, continuous, severe and pervasive.  His inappropriate behavior during softball practice/games included, but is not limited to, comments to Ms. Wilson such as, "where's your fine ass going because I know you didn't get your ass looking that good in those jeans to be going home."  He asked her why she got her tongue piercing, telling her in a sexual way that he's never done anything sexual with a girl who's had a tongue ring before.  Mr. Trujillo took inappropriate photos of Ms. Wilson while she was on the bumper of the school van cleaning the windows on the way to a game, commenting out loud words to the effect, "I have to get a picture of this" - referring to her sexually.  He constantly walked behind her, inappropriately checking her out in the presence of other students.  He sent her a text message saying, "Dirty girl."  The other members of the team repeatedly commented on his inappropriate behavior.

///

///

125.    Following his termination resulting from plaintiff's discrimination complaint, Defendant TRUJILLO retaliated and threatened plaintiff.  He appeared at both of PLAINTIFF's job sites where she worked.  He would intentionally wait in her cashier line at Stater Brothers and have her bag his groceries, causing plaintiff to feel threatened, intimidated or coerced.  This would cause PLAINTIFF such severe distress that she would have to leave work as soon as TRUJILLO left.  She was going to request a transfer to a different store but this would have resulted in a loss of hours.  So, whenever he comes in her supervisor would allow PLAINTIFF to go into the break room until TRUJILLO leaves.  On one occasion, TRUJILLO came into the Del Taco where she worked just as PLAINTIFF was leaving.  PLAINTIFF walked back inside to avoid him, and she heard him say, "Fuckin' bitch" and then left.  Plaintiff felt threatened, intimidated and coerced.

126.    All defendants intentionally and deliberately inflicted extreme emotional distress upon PLAINTIFF, through the outrageous series of acts described above.  To act in this fashion is a shock to the conscience of the public.

127.    Defendants' extreme and outrageous misconduct caused PLAINTIFF to suffer severe and permanent psychological damage and physical harm.

128.    In committing these unlawful acts under the color of law while in the employ of VICTOR VALLEY, and afterwards, defendants TRUJILLO, THOMAS, YOKOTOBI and JOHNSTON acted with malice, oppression and fraud, in conscious disregard of plaintiff's rights, and with no reasonable grounds to believe that their actions served any proper educational or lawful function, and they knew that the impact of their unlawful actions was damaging to the mind, the emotions, and the mental health of a minor under their care, and knew that the impact would cause the plaintiff to suffer emotional distress.

129.    PLAINTIFF has suffered and continues to suffer severe and permanent psychological damage, injuries, embarrassment, humiliation, loss of reputation, lost career and educational opportunities, defamation, false light, slander, libel, physical harm and emotional distress as a direct and proximate result of defendants' violations of her rights, as well as economic damages in an amount in excess of the court's minimum jurisdiction, the exact

amount to be determined at trial.

## NINTH CAUSE OF ACTION

### (NEGLIGENCE – NEGLIGENT HIRING, SUPERVISION AND RETENTION OF EMPLOYEES)

### AGAINST VICTOR VALLEY and DOES 1 to 100

130.    PLAINTIFF incorporates herein paragraph 1 through 129, as if stated in full herein.

131.    Upon information and belief, prior to the incidents herein, defendant TRUJILLO had previously engaged in unlawful harassment of students.

132.    Defendants negligently hired, supervised, and retained TRUJILLO and THOMAS.

133.    PLAINTIFF has suffered and continues to suffer severe and permanent psychological damage, injuries, embarrassment, humiliation, loss of reputation, lost career and educational opportunities, defamation, false light, slander, libel, physical harm and emotional distress as a direct and proximate result of defendants' violations of her rights, as well as economic damages in an amount in excess of the court's minimum jurisdiction, the exact amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a jury trial on all claims in this pleading.

## PRAYER FOR RELIEF

Wherefore Plaintiff prays for judgment against defendants, individually and jointly, as follows:

1.    General, special and exemplary damages for the first through sixth causes of action (where applicable) in an amount within the jurisdiction of this court,

2.    Injunctive relief;

3.    Treble damages (3rd through 7th causes of action);

UNVERIFIED SECOND AMENDED COMPLAINT

4.   Statutory penalties (3rd through 7th causes of action);

5.   Costs of suit, as well as prejudgment interest;

6.   Attorney's fees as allowed by law; and

7.   And such other and further relief as the court deems just and proper.


DATE: AUGUST 1, 2014                           PETER K. LEVINE, A PROF. LAW CORPORATION


By: _____
    PETER K. LEVINE, ESQ.
    Attorney for Plaintiff


g:\new\1855\pleading\sac\sac final (ver2).docx

UNVERIFIED SECOND AMENDED COMPLAINT